STANLEY E. WOODWARD, JR.
Associate Attorney General
BRETT A. SHUMATE
Assistant Attorney General
Civil Division
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division
BENJAMIN MEHR
Senior Counsel to the Associate Attorney
General
ANNA EDWARDS
Counsel to the Associate Attorney General
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
JOHN J.W. INKELES
Chief
Office of Immigration Litigation
Affirmative Litigation Unit
BLAEC E. SHAW
Trial Attorney
Office of Immigration Litigation
Affirmative Litigation Unit

LESLEY A. WOODS
United States Attorney
District of Nebraska

*Attorneys for the Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA
## OMAHA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil No.  8:26-cv-172 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| STATE OF NEBRASKA, | |
| Defendant. | |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

Federal law prohibits illegal aliens in our Nation from receiving in-state tuition benefits that are denied to out-of-state United States citizens. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet Nebraska has ignored this Federal law for over two decades. Legislative Bill 239, codified at Neb. Rev. Stat. § 85-502, extends eligibility for in-state tuition benefits at Nebraska postsecondary

education institutions to illegal aliens, while requiring payment of higher tuition rates for U.S. citizens from other states. Three other Nebraska statutes, Neb. Rev. Stat. §§ 85-1907(3), 85-3202(6), and 85-2102(6), extend eligibility for scholarships and financial assistance to illegal aliens on the basis of residence but similarly deny them to U.S. citizens from other states. And a fourth statute, Neb. Rev. Stat. § 4-112, extends eligibility for illegal aliens to receive public benefits by merely attesting that they are present in the United States legally prior to verification by the U.S. Department of Homeland Security ("DHS"). These statutes engage in blatant unequal treatment favoring illegal aliens over citizens from other states. Worse, such preferential treatment is squarely prohibited and preempted by Congress. Federal law mandates that "an alien who is not lawfully present in the United States *shall not be* eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). Accordingly, under the Supremacy Clause of our Nation's Constitution, the portions of Neb. Rev. Stat. §§ 85-502, 85-1907(3), 85-3202(6), and 85-2102(6), that extend eligibility for in-state tuition benefits to illegal aliens are unconstitutional and must yield to Federal law. This Court should declare those portions of all four Nebraska statutes preempted and unconstitutional, and the Court should permanently enjoin the operation and enforcement of those portions of all four statutes.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

2.      Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

3.      The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable powers.

**PARTIES**

4.      Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities. Plaintiff enforces Federal immigration laws through its Executive agencies, including the Department of Justice ("DOJ"), DHS, and DHS component agencies, U.S. Immigration and Customs Enforcement ("ICE"), U.S. Citizenship and Immigration Services ("USCIS"), and U.S. Customs and Border Protection ("CBP").

5.      Defendant State of Nebraska is a state of the United States.

**FEDERAL LAW**

6.      The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

7.      The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over immigration matters.

8.      The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters.  This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress.  *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure

3

concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

9. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

10. On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[1] ordering Federal Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id*. at § 2(a).

11. On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[2] directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id*. at § 5.

12. These Orders emphasize that Federal and state governments must not confer greater benefits to illegal aliens present in our Nation than to American citizens. They also reflect Congress's end—expressed in multiple provisions of the Immigration and Nationality Act ("INA")—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for American citizens.

---

[1] Executive Order, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), https://www.whitehouse.gov/presidential-actions/2025/02/ending-taxpayer-subsidization-of-open-borders/
[2] Executive Order, *Protecting American Communities From Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/protecting-american-communities-from-criminal-aliens/

13. Specifically, in 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id.*; *see also* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

14. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id*. § 1601(2)(A).

15. Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id*. § 1601(2)(B).

16. Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. §§ 1601(5), (6).

17. As relevant here, PRWORA states: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

18. But even in such cases, a state may not offer in-state tuition (or "resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states. *See* 8 U.S.C. § 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id*.

19. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id*.

20. Accordingly, under 8 U.S.C. § 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence.

## THE NEBRASKA LAWS

### I.    Resident Tuition (Neb. Rev. Stat. § 85-502)

21. In direct conflict with Federal law, Nebraska law rewards an illegal alien present in our Nation with eligibility for in-state tuition based on residence within that state, while explicitly denying eligibility for resident tuition rates to United States citizens who are not Nebraska residents. *See* Neb. Rev. Stat. § 85-502.

22. Since 2006, Section 85-502 has rewarded illegal aliens who violate Federal law with eligibility for in-state tuition in Nebraska while denying that same benefit to United States citizens who are not residents of Nebraska.

23. Section 85-502 unequivocally enables illegal aliens living in Nebraska to receive eligibility for resident tuition in Nebraska. Under Section 85-502, a person is deemed a resident of Nebraska if he or she "has established a home in Nebraska where he or she is habitually present for a minimum period of one hundred eighty days, with the bona fide intention of making this state his or her permanent residence, supported by documentary proof." Neb. Rev. Stat. § 85-502(1).

24. Residency is extended to any person if their parent or guardian has "established a home in Nebraska where such parents, parent, or guardian are or is habitually present with the bona fide intention to make [Nebraska] their, his, or her permanent residence, supported by documentary proof." Neb. Rev. Stat. § 85-502(2).

25.     Residency is also extended to any person who marries a Nebraska resident, Neb. Rev. Stat. § 85-502(4), to staff members or a dependent of a staff member of a Nebraska public college or university, Neb. Rev. Stat. § 85-502(6), and to students serving in the Nebraska National Guard, Neb. Rev. Stat. § 85-502(8).

26.     Section 85-502 explicitly extends Nebraska residency to an illegal alien if he or she has merely lived in Nebraska for at least 180 days, is habitually present with the bona fide intention to make Nebraska their permanent residence, supported by documentary proof, and "has applied to or has a petition pending" with federal immigration agencies "to attain lawful status under federal immigration law."  Neb. Rev. Stat. § 85-502(5).

27.     Specifically, Section 85-502(9)(a) allows for aliens to meet the residency requirements if the student resided with his parent, guardian, or conservator while attending a high school in the state, or a school in the state which elected to not meet accreditation requirements, and they: graduated from high school or obtained a GED in Nebraska; resided in Nebraska for at least three years before the date of his or her high school graduation; have registered as an entering student at a postsecondary educational institution no earlier than the fall 2006 semester; and submit an affidavit stating he or she will apply to become a permanent resident at his earliest opportunity. Neb. Rev. Stat. § 85-502(9)(a).

28.     Put differently, an illegal alien receives in-state tuition in Nebraska so long as he resided with a parent, guardian, or conservator while attending a high school in the state, and 1) is registered to attend a Nebraska postsecondary educational institution; 2) resided in Nebraska for at least three years before the date the student graduated from high school; 3) graduated from a Nebraska high school or received a GED; and 4) filed an affidavit affirming his intent to apply to become a permanent resident once eligible to do so.

29.     Accordingly, under Nebraska law, the tuition rate for illegal aliens in Nebraska who satisfy Section 85-502's criteria is the same tuition rate as other Nebraska residents.  However, a United States citizen that is not eligible for in-state tuition under Section 85-502, due to residency requirements, is required to pay higher, nonresident tuition.

30.    Put simply, Section 85-502's requirements confer preferential treatment to illegal aliens within our Nation over American citizens on the basis of residence.  That clearly contravenes Congress's command in § 1623(a).

31.    In direct conflict with Federal law, Nebraska law also rewards an illegal alien present in our Nation with eligibility for state-funded scholarships and financial assistance based on residence within Nebraska while explicitly denying eligibility for the same state-funded scholarships to United States citizens who are not Nebraska residents.

**II.    Coordinating Commission for Postsecondary Education**

32.    The Nebraska Coordinating Commission for Postsecondary Education ("CCPE") administers, coordinates, and oversees post-secondary education in Nebraska. Neb. Rev. Stat. §§ 85-1401 to 85-1420.

33.    Among its other responsibilities, the CCPE helps "administer loans, grants, and programs from the federal or state government and from other sources, public and private, for carrying out any of its functions, including the administration of privately endowed scholarship programs." Neb. Rev. Stat. § 1412(8).

34.    The CCPE administers numerous public scholarships and financial assistance programs, Neb. Rev. Stat. § 85-1412(7), including three discussed here.

**III.    Nebraska Scholarships and Financial Assistance Available to Illegal Aliens**

35.    The Nebraska Opportunity Grant Act ("NOG Act"), established by Neb. Rev. Stat. §§ 85-1901-1920, rewards illegal aliens who violate Federal law with eligibility for financial assistance based on financial need while denying that same benefit to United States citizens who are not residents of Nebraska.

36.    The NOG Act provides for financial assistance to postsecondary educational institutions who then issue such awards to an "eligible student" who is, among other criteria, defined as "a resident student who is domiciled in Nebraska as provided by section 85-502." Neb. Rev. Stat. § 85-1907(3).

37. Section 85-1907(3) and Section 85-502 thus make illegal aliens residing in Nebraska eligible for the NOG Act so long as they satisfy Nebraska residency requirements, among other criteria, while a U.S. citizen residing outside of Nebraska is not eligible.

38. The Access College Early Scholarship Program Act ("ACESPA"), established by Neb. Rev. Stat. §§ 85-2101 to 2108, rewards illegal aliens who violate Federal law with eligibility for scholarships, based on financial need, and disbursed to their post-secondary educational institution, while denying that same benefit to United States citizens who are not residents of Nebraska.

39. The ACESPA provides for scholarships to any individual who is, among other criteria, "a student attending a Nebraska high school with a reasonable expectation that such student will meet the residency requirements of Section 85-502 upon graduation from a Nebraska high school." Neb. Rev. Stat. § 85-2102(6).

40. Section 85-2102(6) and Section 85-502 thus make illegal aliens residing in Nebraska eligible for the ACESPA so long as they satisfy Nebraska residency requirements, among other criteria, while a U.S. citizen residing outside of Nebraska is not.

41. The Door to College Scholarship Act ("DTC Act"), established by Neb. Rev. Stat. §§ 85-3201-3211, rewards illegal aliens who violate Federal law with eligibility for financial assistance while denying that same benefit to United States citizens who are not residents of Nebraska.

42. The DTC Act provides financial assistance to any individual who is, among other criteria, "a resident student who is domiciled in Nebraska as provided by section 85-502." Neb. Rev. Stat. § 85-3202(6)(d).

43. The DTC Act also provides for financial assistance to any individual who, among other criteria, "Graduated from high school from an accredited education program at a youth rehabilitation and treatment center operated and utilized in compliance with state law, or graduated from an approved or accredited public, private, denominational, or parochial school or received a diploma of high school equivalency issued by the Commissioner of Education after being discharged from a youth rehabilitation and treatment center operated and utilized in compliance

with state law." Neb. Rev. Stat. § 85-3202(6)(a). Since Nebraska makes high school attendance compulsory, *see* Neb. Rev. Stat. § 79-201, and conditions the availability of free public high school education on residence, *see* Neb. Rev. Stat. §79-215, the requirement of Neb. Rev. Stat. § 85-3202(6)(a) amounts to a residency requirement by proxy.

44.    Section 85-3202(6) of the DTC Act and Section 85-502, thus make illegal aliens residing in Nebraska eligible for the DTC Act so long as they satisfy Nebraska residency requirements, among other criteria, while a U.S. citizen residing outside of Nebraska is not.

**IV.    Limitations on Eligibility for Public Benefits (Neb. Rev. Stat. §§ 4-108 to 4-112)**

45.    Although a Nebraska statute provides that only individuals lawfully present in the United States may receive public benefits, Neb. Rev. Stat. §4-108(1), this statute does not preclude the state from providing the NOG Act, DTC Act, ACESPA, and other publicly funded scholarships or financial assistance to illegal aliens.

46.    Nebraska defines public benefit in part as any "postsecondary education benefit involving direct payment of financial assistance." Neb. Rev. Stat. § 4-109.

47.    The ACESPA scholarship does not constitute public benefits as defined by Neb. Rev. Stat. § 4-109 because it does not involve "direct payment" to the student.

48.    Therefore, the limitation in Neb. Rev. Stat. § 4-109 that prohibits illegal aliens from receiving public benefits does not apply to the ACESPA scholarship.

49.    Additionally, even if the CCPE interprets the ACESPA as "public benefits" under Neb. Rev. Stat. § 4-109 and restricts eligibility to those scholarships on that basis, illegal aliens would still be eligible for the scholarships by making the attestation of lawful status contemplated by Neb. Rev. Stat. § 4-111(1). *See infra* ¶¶ 53-56.

50.    The NOG Act and the DTC Act, regardless of their classification under Nebraska law, make illegal aliens eligible to receive them.

51.    Nebraska permits individuals to obtain public benefits relating to postsecondary education merely by submitting an attestation that the individual is a United States citizen or is lawfully present in the United States.  Neb. Rev. Stat. § 4-111(1).

10

52. And while a Nebraska statute purports to require the verification of the applicant's attestation of lawful presence by DHS, "[u]ntil such verification of eligibility is made, such attestation may be presumed to be proof of lawful presence for purposes of [eligibility for state public benefits] unless such verification is required before providing the public benefit under another provision of state or federal law." Neb. Rev. Stat. § 4-112.

53. No provision of Nebraska law requires verification of lawful presence, beyond an unverified attestation on behalf of the applicant, prior to eligibility for and distribution of postsecondary education benefits. In other words, the NOG Act and the DTC Act can be provided to an illegal alien who simply says that he is lawfully present even if that is not true.

54. Nor does any provision of Nebraska law require verification of the applicant's attestation of lawful presence with DHS within a certain period before or after the distribution of postsecondary education benefits based solely on the applicant's attestation of lawful presence. The result is that the illegal alien could receive the NOG Act and the DTC Act for any period of time while the verification of his status is pending.

55. Nebraska law thus provides eligibility for the distribution of postsecondary educational benefits like the NOG Act and the DTC Act to individuals based solely on their own attestation that they are U.S. citizens or lawfully present, without verification by DHS of their immigration status prior to—or at any time after—the distribution of those benefits.

## THE NEBRASKA LAWS ARE PREEMPTED

56. The Constitution's Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

57. Express preemption occurs when Congress, through statutory language, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983).

58. Federal statutes may preempt state laws and render them ineffective. They may do this expressly, by declaring that intent on the face of the statute. *Arizona v. United States*, 567 U.S.

387, 399 (2012) ("There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision.").

59. "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (quotations omitted); *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (explaining that under the Supremacy Clause, state laws that conflict with Federal law are "without effect"); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same).

60. When the Federal statute contains an express preemption clause, the court does not indulge "any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation omitted).

61. Here, § 1623(a) contains an express preemption clause as it directs that "[n]otwithstanding any other provision of law," an illegal alien "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

62. As indicated by its title—'Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits'—§ 1623(a) mandates that all United States citizens must be eligible for a benefit regardless of residency before any illegal alien can receive that benefit based on residency.

63. At least three courts have found that § 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023); *see also Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under § 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *3 (Ariz. Ct. App. Nov. 7, 2019) ("Section

12

1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

64. Moreover, the United States District Court for the Northern District of Texas recently held that § 1623(a) expressly preempted Texas Education Code §§ 54.051(m) and 54.052(a), which permitted illegal aliens to qualify for in-state tuition, even though out-of-state American citizens were not afforded the same benefit. *See United States v. Texas*, 350 F.R.D. 74, 79–81 (N.D. Tex. 2025); *see also United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause). In so doing, the court found that § 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible." *Texas*, 350 F.R.D. at 79 (citation and internal citations omitted).

65. Similarly, the United States District Court for the Eastern District of Oklahoma found that analogous Oklahoma in-state tuition provisions "as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and are unconstitutional and invalid." *See* Order and Final Consent Judgment at 1, *United States v. Oklahoma*, No. 6:25-cv-00265-RAW-DES (E.D. Okla. Aug. 29, 2025); *see also* Rpt & Rec. at 1, *United States v. Oklahoma*, No. 6:25-cv-00265-RAW-DES, slip op. at 1 (E.D. Okla. Aug. 7, 2025) (holding that 8 U.S.C. § 1623(a) expressly preempts Oklahoma laws providing that individuals "who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet certain residency and high school graduation criteria").

66. The United States District Court for the Eastern District of Kentucky recently entered a consent judgement between Plaintiff United States of America and Defendant Kentucky Council on Postsecondary Education, *et al*. permanently enjoining the Kentucky Council on Postsecondary Education from enforcing Kentucky regulation 13 KAR 2:045, Section 8(4)(a) (eff. 6-22-2022), the Tuition Assessment Regulation. *See* Opinion & Order, *United States v. Kentucky Council on Postsecondary Education, et al.*, No. 3:25-cv-00028-GFVT (E.D. Ky. Mar. 31, 2026).

The Kentucky regulation allowed illegal aliens who graduated from a Kentucky high school, among other criteria, to be considered Kentucky residents for purposes of in-state tuition. The court found that the Kentucky regulation violated federal law, 8 U.S.C. § 1621(d), because it was promulgated and enforced by the Kentucky Council on Postsecondary Education and therefore was not a valid *State* law, which Section 1621(d) requires, but a regulation instead. *See id.* at 21. The court noted its subject matter jurisdiction per 28 U.S.C. §§ 1331, 1345 (*see id.* at 6, 7) and found that although both parties agreed on the merits of the consent judgement, a "justiciable controversy remains present," as the Kentucky Council on Postsecondary Education continued to enforce the regulation. *Id*. at 8. The court determined that it had jurisdiction and adopted the consent decree "[h]aving determined that the proposed consent decree is necessary to remedy a violation of federal law, the Court must approve it." *Id* at 21.

67.    Here, Neb. Rev. Stat. § 85-502 conflicts with 8 U.S.C. § 1623(a) because the Nebraska statute confers eligibility for in-state tuition benefits to illegally present aliens that are not available to American citizens on the same terms, regardless of residency.

68.    As a result, § 1623(a) expressly preempts Neb. Rev. Stat. § 85-502, § 85-1907(3), § 85-3202(6), and § 85-2102(6), because portions of those Nebraska statutes bestow eligibility for postsecondary education benefits on illegal aliens that United States citizens who reside elsewhere are not eligible for. Those portions of Sections 85-502, 85-1907(3), 85-3202(6), and 85-2102(6) are, therefore, unconstitutional.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF NEB. REV. STAT. § 85-502)

69.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

70.    Section 85-502, to the extent it extends eligibility for in-state tuition benefits to illegal aliens, violates Federal immigration law.  It directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits (lower, resident tuition rates) based

14

on residency to illegal aliens present in the United States that are not available to all United States citizens regardless of residency.  *See* 8 U.S.C. § 1623(a).

71.    Accordingly, the Court should find the challenged provision, Neb. Rev. Stat. § 85-502, unconstitutional.

## COUNT II
## VIOLATION OF THE SUPREMACY CLAUSE
## (PREEMPTION OF NEB. REV. STAT. § 85-1907(3))

72.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

73.    Section 85-1907(3), to the extent it extends eligibility for in-state tuition benefits to illegal aliens, violates Federal immigration law.  It directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits (NOG Act) based on residency to illegal aliens present in the United States that are not available to all United States citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

74.    Accordingly, the Court should find the challenged provision, Neb. Rev. Stat. § 85-1907(3), unconstitutional.

## COUNT III
## VIOLATION OF THE SUPREMACY CLAUSE
## (PREEMPTION OF NEB. REV. STAT. § 85-3202(6))

75.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

76.    Section 85-3202(6), to the extent it extends eligibility for in-state tuition benefits to illegal aliens, violates Federal immigration law.  It directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits (DTC Act) based on residency to illegal aliens present in the United States that are not available to all United States citizens regardless of residency.  *See* 8 U.S.C. § 1623(a).

77.    Accordingly, the Court should find the challenged provision, Neb. Rev. Stat. § 85-3202(6), unconstitutional.

## COUNT IV
## VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF NEB. REV. STAT. § 85-2102(6))

78.     Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

79.     Section 85-2102(6), to the extent it extends eligibility for in-state tuition benefits to illegal aliens, violates Federal immigration law.  It directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits (ACESPA) based on residency to illegal aliens present in the United States that are not available to all United States citizens regardless of residency.  *See* 8 U.S.C. § 1623(a).

80.     Accordingly, the Court should find the challenged provision, Neb. Rev. Stat. § 85-2102(6), unconstitutional.

### PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1.     That this Court enter a judgment declaring the portions of Neb. Rev. Stat. §§ 85-502, 85-1907(3), 85-3202(6), and 85-2102(6), to the extent they extend eligibility for in-state tuition benefits to illegal aliens, violate the Supremacy Clause and are therefore unconstitutional and invalid;

2.     That this Court issue a permanent injunction that prohibits Defendant as well as their successors, agents, and employees, from enforcing the portions of Neb. Rev. Stat. §§ 85-502, 85-1907(3), 85-3202(6), and 85-2102(6), to the extent they extend eligibility for in-state tuition benefits to illegal aliens;

3.     That this Court award the United States its costs and fees in this action; and

4.     That this Court award any other relief it deems just and proper.

DATED: April 21, 2026

LESLEY A. WOODS
United States Attorney
District of Nebraska
1620 Dodge Street, Suite 1400
Omaha, NE 68102
Telephone: 402-661-3700
Email: lesley.woods@usdoj.gov

Respectfully Submitted

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

BENJAMIN MEHR
Senior Counsel to the Associate Attorney
General

ANNA EDWARDS
Counsel to the Associate Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

JOHN J.W. INKELES
Chief
Office of Immigration Litigation
Affirmative Litigation Unit

*s/ Blaec E. Shaw*

BLAEC E. SHAW, Trial Attorney
Bar Number: MD 1612140230
Attorney for Plaintiff
United States Department of Justice
Civil Division
Office of Immigration Litigation
Affirmative Litigation Unit
P.O. Box 878, Ben Franklin Station
Washington DC 20044
Tel: 202-353-9986
Fax: 202-305-7000
E-mail: Blaec.E.Shaw@usdoj.gov

*Attorneys for the Plaintiff*

17