**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEBRASKA**

UNITED STATES OF AMERICA,

        Plaintiff,

v.

STATE OF NEBRASKA,

        Defendant.

Case No. 26-cv-172

Hon. Brian C. Buescher

**PROPOSED INTERVENORS' BRIEF IN SUPPORT OF MOTION TO
INTERVENE**

**TABLE OF CONTENTS**

Introduction ....................................................................................................... 1

Background......................................................................................................... 3

    I.   Nebraska's In-State Tuition Provisions............................................. 3

    II.  The Parties' Collusive Motion for Consent Judgment ...................... 4

    III. The Proposed Intervenors and the Potential Harms of the Consent Decree.... 6

Argument ........................................................................................................... 9

    I.   Proposed Intervenors Have Article III Standing............................... 10

    II.  Proposed Intervenors Are Entitled to Intervene Of Right............... 11

       A.   Proposed Intervenors' Motion is Timely. ..................................... 12

         i.   Extent of Litigation Progression ................................... 12

         ii.  Prospective Intervenors' Knowledge of Litigation ..................... 13

         iii. Reason for Any Delay.................................................... 14

         iv. Prejudice to Existing Parties......................................... 14

       B.   Proposed Intervenors Have Substantial Interests At Stake. ...................... 15

       C.   Proposed Intervenors' interest will be impaired without intervention....... 16

       D.   No party will adequately represent Proposed Intervenors' interest.......... 17

    III. In The Alternative, Proposed Intervenors Should Be Granted Permissive Intervention. .......................................................................... 19

Conclusion......................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Animal Legal Def. Fund v. Reynolds,*
    89 F.4th 1071 (8th Cir. 2024)...................................................................... 9.

*Animal Prot. Inst. v. Merriam,*
    242 F.R.D. 542 (D. Minn. 2006) ............................................................. 15

*Arrow v. Gambler's Supply, Inc.,*
    55 F.3d 407 (8th Cir. 1995) .................................................................... 12

*Brumfield v. Dodd,*
    749 F.3d 339 (5th Cir. 2014) .................................................................. 15

*Chase v. Andeavor Logistics, L.P.,*
    165 F.4th 1102 (8th Cir. 2026)................................................................ 19

*Chiglo v. City of Preston,*
    104 F.3d 185 (8th Cir. 1997) .................................................................. 17

*Ctr. for Biological Diversity v. Strommen,*
    114 F.4th 939 (8th Cir. 2024)......................**Error! Bookmark not defined.**

*E.M. v. Neb.,*
    306 Neb. 1 (2020) ..................................................................................... 8

*EEOC v. Prod. Fabricators, Inc.,*
    666 F.3d 1170 (8th Cir. 2012) ................................................................ 14

*FDA v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ...............................**Error! Bookmark not defined.**, 11

*Grutter v. Bollinger,*
    188 F.3d 394 (6th Cir. 1999) .................................................................. 15

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ....................................**Error! Bookmark not defined.**

*Iowa v. Wright,*
    154 F.4th 918 (8th Cir. 2025).......................**Error! Bookmark not defined.**

*Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.,*
    60 F.3d 1304 (8th Cir. 1995) ........................................................... 14

*Leaf Supreme Prods., LLC v. Bachman,*
    2019 WL 2582560 (D. Neb. June 24, 2019) ...................................... 1

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne,*
    659 F.3d 421 (5th Cir. 2011) .......................................................... 13

*Lewis v. Windsor Door Co.,*
    926 F.2d 729 (8th Cir. 1991) ........................................................... 1

*Lujan v. Defs. Of Wildlife,*
    504 U.S. 555 (1992) ......................................................................... 9

*Medical Liability Mut. Ins. Co. v. Alan Curtis LLC,*
    485 F.3d 1006 (8th Cir. 2007) ..................15, **Error! Bookmark not defined.**

*Mille Lacs Band of Chippewa Indians v. Minnesota,*
    989 F.2d 994 (8th Cir. 1993) ............................................... 11, 14, 17

*Nat'l Parks Conservation Ass'n v. U.S. E.P.A.,*
    759 F.3d 969 (8th Cir. 2014) ...................................................... 9, 11

*S. Dakota ex rel. Barnett v. U.S. Dep't of Interior,*
    317 F.3d 783 (8th Cir. 2003) .......................................................... 18

*Smith v. L.A. Unified Sch. Dist.,*
    830 F.3d 843 (9th Cir. 2016) .......................................................... 16

*Trbovich v. United Mine Workers of America,*
    404 U.S. 528 (1972) ....................................................................... 17

*United Airlines, Inc., v. McDonald,*
    432 U.S. 393 (1977) ....................................................................... 14

*United Food & Commercial Workers Union v. United States Dep't of Agric.,*
    36 F.4th 777 (8th Cir. 2022)...................................................... 12,, 13

*United States v. Beshear,*
    25-cv-00028 (E.D. Ky. June 17, 2025) .......... **Error! Bookmark not defined.**

*United States v. BP Amoco Oil PLC,*
    277 F.3d 1012 (8th Cir. 2002) ...................... **Error! Bookmark not defined.**

*United States v. Illinois,*
    3:25-cv-1691 (S.D. Ill. Sept. 2, 2025) ............ **Error! Bookmark not defined.**

*United States v. Johnson,*
    319 U.S. 302 (1943) ................................................................................... 18

*United States v. Newsom,*
    No. 2:25-cv-03375 (E.D. Cal. Nov. 20, 2025) **Error! Bookmark not defined.**

*United States v. Oklahoma,*
    No. 6:25-cv-00265 (E.D. Okla. Aug. 5, 2025) **Error! Bookmark not defined.**

*United States v. Texas,*
    No. 7:25-cv-00055 (N.D. Texas June 4, 2025) .............. **Error! Bookmark not defined.**

*United States v. Union Elec. Co.,*
    64 F.3d 1152 (8th Cir. 1995) 12, 13, **Error! Bookmark not defined.**, **Error! Bookmark not defined.**

*United States v. Virginia,*
    No. 3:25-cv-1067 (E.D. Va. Dec. 29, 2025) .... **Error! Bookmark not defined.**

*United States v. Walz,*
    No. 0:25-cv-02668 (D. Minn. June 25, 2025) **Error! Bookmark not defined.**

*United States v. Walz,*
    *2026* WL 851231 (D. Minn. Mar. 27, 2026) .. **Error! Bookmark not defined.**

**STATE STATUTES**

Neb. Rev. Stat. 84.205 (2025) ................................................................................. 4

Neb. Rev. Stat. 85.502 ............................................ **Error! Bookmark not defined.**

Neb. Rev. Stat. 85.502(5) (2021) ............................ **Error! Bookmark not defined.**

Neb. Rev. Stat. 85.502(9)(a) ........................................................................................ 3

Neb. Rev. Stat. 85.1907(3) (2025) ........................................................................... 3, 4

Neb. Rev. Stat. 85.2102(6) ................................. 3, **Error! Bookmark not defined.**

Neb. Rev. Stat. 85.3202(6) .................................. 3, **Error! Bookmark not defined.**

## FEDERAL RULES

Fed. R. Civ. P. 24(a)................................**Error! Bookmark not defined.**, 12, 15, 19

Fed. R. Civ. P. 24(a)(2) ........................................................................................ 12, 24

Fed. R. Civ. P. 24(b)(1)(B) ................................................................................... 12, 25

Fed. R. Civ. P. 24(b)(3) ............................................................................................. 25

## LEGISLATIVE MATERIALS

L.B. 239, 99th Leg., 1st Sess. (Neb. 2006)................**Error! Bookmark not defined.**

L.B. 1061, 109th Leg., 2d Sess. (Neb. 2026).............**Error! Bookmark not defined.**

L.B. 870, 109th Leg., 2d Sess. (Neb. 2026)...............**Error! Bookmark not defined.**

## OTHER AUTHORITIES

Univ. of Neb. Omaha,
   *Cost of Attendance* (last visited May 6, 2026)
   https://perma.cc/R64Z-B4PH.......................................................................... 2

Press Release, U.S. Dep't of Just.,
   The Department of Justice Reaches a Proposed Consent Decree with
   Nebraska to Enjoin the State from Enforcing its Unconstitutional In-State
   Tuition and Scholarship Programs for Illegal Aliens (April 21, 2026)
   https://perma.cc/N4SR-VBVJ........................**Error! Bookmark not defined.**,

v

Press Release, U.S. Dep't of Just.,
The Justice Department, Texas Reach Agreement to End In-State Tuition for Illegal Aliens (June 5, 2025)
https://perma.cc/28S8-LVXN..........................**Error! Bookmark not defined.**

## INTRODUCTION

The Plaintiff, the United States, and the nominal Defendant, the State of Nebraska, are jointly seeking entry of a consent decree that would invalidate longstanding, democratically enacted Nebraska statutes. Those statutes enable students to attend Nebraska postsecondary institutions at affordable, in-state tuition rates without regard to immigration status. Because Nebraska is declining to defend its own laws, Proposed Intervenors, who have cognizable interests in the challenged statutes, are entitled to participate in this proceeding to protect those interests and to provide the opposition to the invalidation of those laws that will not be supplied by any existing party.[1]

Proposed Intervenors are two organizations that fund and assist immigrants pursuing higher education in Nebraska. True Potential is a scholarship program of Matters on Tomorrow, a non-profit organization, that funds 100% of the tuition costs and fees for students who are ineligible for federal financial aid, live in Nebraska or Iowa, completed their senior year of high school in the United States, and plan to attend a community or state college in Nebraska or Iowa. Declaration of Ross Pesek,

---

[1] Proposed Intervenors agree with amicus curiae Senator Dunixi Guereca that because "there is no case or controversy" here, "this Court lacks jurisdiction to enter the consent judgment." Filing No. 16 at 3. Proposed Intervenors' motion does not change that analysis. *Lewis v. Windsor Door Co.*, 926 F.2d 729, 732 (8th Cir. 1991) ("When there is no subject-matter jurisdiction over the original action between plaintiff and defendant, it cannot be created by adding a third-party claim over which there is jurisdiction."); *Leaf Supreme Prods., LLC v. Bachman*, 2019 WL 2582560, at *1 n. 1 (D. Neb. June 24, 2019) ("Intervention cannot cure any jurisdictional defect that would have barred the federal court from hearing the original action.") (citing 7C Wright & Miller, Federal Practice and Procedure § 1917 (3d ed.)).

1

Exhibit 1, ¶¶ 3–4. Orel Alliance is a non-profit organization dedicated to ensuring Ukrainian families can secure the resources, including educational opportunities, necessary to rebuild and thrive in Nebraska. Declaration of Amanda Hall, Exhibit 2, ¶¶ 2, 6–8. If those individuals lose eligibility for in-state tuition as a result of this litigation, that will substantially impair the Proposed Intervenors' ability to perform their core missions.

True Potential and Orel Alliance thus seek leave to intervene to protect their interests in providing and supporting the educational opportunities that are imperiled by the proposed consent decree. Their interest in the litigation entitles them to intervention of right under Federal Rule of Civil Procedure 24(a), and they have moved expeditiously to protect their interests.

Intervention is particularly appropriate because the record confirms that the proposed consent decree is not the "procedurally fair" product of negotiations conducted "in good faith and at arm's length." *Ctr. for Biological Diversity v. Strommen*, 114 F.4th 939, 942 (8th Cir. 2024) (quoting *United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1020 (8th Cir. 2002)). Rather, federal and state officials collaborated to achieve a jointly desired outcome, without regard to the democratic process. This Court should not invalidate statutes enacted by the democratically elected representatives of the people of Nebraska without the participation of anyone willing to provide a defense of the interests of the thousands of Nebraska residents who would be harmed by the proposed consent decree.

2

## BACKGROUND

### I.    Nebraska's In-State Tuition Provisions

As is true in many states, Nebraska public post-secondary schools charge substantially higher tuition to students who lack a connection to Nebraska than is charged to students who qualify for "in-state" tuition. For example, at the University of Nebraska at Omaha, in-state tuition costs $9,768 per year; out-of-state tuition costs $26,092. Exhibit 3, Univ. of Neb. Omaha, *Cost of Attendance*, (last visited May 6, 2026) https://perma.cc/R64Z-B4PH.

In 2006, the Nebraska legislature revised the statutory requirements setting forth how individuals may qualify for in-state tuition. *See* Exhibit 4, L.B. 239, 99th Leg., 1st Sess. (Neb. 2006). Under current state law, a non-citizen is deemed eligible for in-state tuition rates if they meet certain requirements. For example, an individual qualifies if they have an immigration "petition pending … to attain lawful status," have lived in Nebraska for at least 180 days, are habitually present in the state, and intend to remain. Neb. Rev. Stat. § 85-502(5) (2021). Additionally—and as most directly relevant here—an individual may qualify, without regard to citizenship or immigration status, if they resided with a parent or other guardian while attending a Nebraska high school, graduated from that high school (or obtained an equivalent education), resided in Nebraska for at least three years prior to graduation, registered as an incoming student at a Nebraskan postsecondary educational institution no earlier than the fall of 2006, and avers that they will apply to become a permanent resident of the United States at the earliest available opportunity. Neb. Rev. Stat. §

3

85-502(9)(a). In addition to establishing eligibility for in-state tuition rates, these provisions also serve as the eligibility criteria for several scholarship programs such as the Nebraska Opportunity Grant Act, Neb. Rev. Stat. § 85-1907(3) (2025); the Door to College Scholarship Act, *id.* § 85-3202(6) (2025); and the Access College Early Scholarship Program Act, *id.* § 85-2102(6) (2015).

Over the two decades Nebraska law has provided for in-state tuition for qualifying noncitizens, the Legislature has repeatedly declined to repeal or amend these eligibility requirements. Most recently, in 2026, two separate bills that would have modified eligibility for in-state tuition failed to advance. *See* Exhibit 5, L.B. 870, 109th Leg., 2d Sess. (Neb. 2026); Exhibit 6, L.B. 1061, 109th Leg., 2d Sess. (Neb. 2026).

## II.  The Parties' Collusive Motion for Consent Judgment

Just three days after the recent state legislative session adjourned, the United States brought this suit against Nebraska alleging that its statutes regarding eligibility for in-state tuition and scholarships violate the Supremacy Clause. Filing No. 1. The very same day, Nebraska and the United States jointly moved for entry of a consent judgment. Filing No. 2. That motion asks this Court to declare invalid portions of "Neb. Rev. Stat. §§ 85-502, 85-1907(3), 85-3202(6), and 85-2102(6), to the extent they extend eligibility for in-state tuition benefits to aliens who are not lawfully present in the United States," on the theory that those statutes violate the federal Supremacy Clause, and to permanently enjoin their continued implementation. Filing No. 2, ¶¶ 3–9.

4

Despite his duty to "defend actions and claims against the state," Neb. Rev. Stat. § 84-205 (2025), the Nebraska Attorney General immediately capitulated once the complaint was filed. He waived service of process, consented to the Court's jurisdiction, and made no effort to defend the constitutionality of these statutes. Filing Nos. 2, 5. Indeed, the joint motion for a consent judgment was filed before a summons was even requested by the United States. Filing Nos. 2, 3.

Once the proposed consent judgment was filed, Nebraska Governor Jim Pillen made clear that the litigation had been choreographed and that the parties had prearranged this suit to achieve shared policy goals, describing the proposed consent judgment as resulting from the "combined efforts of President Trump's Department of Justice and Attorney General Hilgers . . . [and] is the latest example of the tremendous partnership between the State of Nebraska and the Trump Administration." Exhibit 7, Press Release, U.S. Dep't of Just., The Department of Justice Reaches a Proposed Consent Decree with Nebraska to Enjoin the State from Enforcing its Unconstitutional In-State Tuition and Scholarship Programs for Illegal Aliens (April 21, 2026), https://perma.cc/N4SR-VBVJ.

The Nebraska Attorney General's immediate capitulation also cannot be attributed to the absence of colorable arguments that can be mounted in defense of Nebraska law. The United States has brought recent challenges to several other analogous in-state tuition statutes, and several state Attorneys General are discharging their duties to zealously defend their respective state laws. *See United States v. Walz*, No. 0:25-cv-02668 (D. Minn. filed June 25, 2025); *United States v.*

5

*Virginia*, No. 3:25-cv-1067 (E.D. Va. Dec. 29, 2025); *United States v. Illinois*, 3:25-cv-1691 (S.D. Ill. filed Sept. 2, 2025); *United States v. Newsom*, No. 2:25-cv-03375 (E.D. Cal. filed Nov. 20, 2025). Minnesota's in-state tuition law was recently upheld on the merits. *United States v. Walz*, No. 25-CV-2668, 2026 WL 851231 (D. Minn. Mar. 27, 2026). And while Nebraska is not the first state to refuse to defend its in-state tuition law, other suits in which a state has immediately capitulated bear similar indicia of having been choreographed based on a shared policy preference between the United States and the respective state's current political leadership. *See, e.g.*, Exhibit 8, Press Release, U.S. Dep't of Just., The Justice Department, Texas Reach Agreement to End In-State Tuition for Illegal Aliens, https://perma.cc/28S8-LVXN (June 5, 2025) (statement by the Texas Attorney General describing himself as "stand[ing] with Attorney General Bondi and the Trump Administration to stop an unconstitutional and un-American law"); *see United States v. Texas*, No. 7:25-cv-00055 (N.D. Texas filed June 4, 2025); *see also United States v. Beshear*, 25-cv-00028 (E.D. Ky. filed June 17, 2025); *United States v. Oklahoma*, No. 6:25-cv-00265 (E.D. Okla. filed Aug. 5, 2025).

## III. The Proposed Intervenors and the Potential Harms of the Consent Decree

Proposed Intervenors are organizations that have the mission of providing services and financial support to students who are currently enrolled or plan to enroll at Nebraska public universities. These services are provided without regard to immigration status to students who qualify for in-state tuition under existing Nebraska law.

True Potential operates as an independent subprogram within Matters on Tomorrow, a Nebraska-based non-profit organization. Exhibit 1, ¶ 2. True Potential's core business activity is to operate a scholarship program that funds 100% of the tuition costs and fees  for students who are ineligible for federal financial aid, live in Nebraska or Iowa, completed their senior year of high school in the United States, and plan to attend a community or state college in Nebraska or Iowa. *Id.* ¶ 3. Since True Potential was founded in 2013, it has provided more than 300 scholarships to students who are undocumented or living in Nebraska under immigration statuses such as deferred action, Deferred Action for Childhood Arrivals ("DACA"), or Temporary Protected Status ("TPS"). *Id.* ¶ 8. True Potential is committed to paying 100% of the tuition and fees for 27 students attending Nebraska public post-secondary colleges in the 2026-2027 academic year. *Id.* ¶ 9. True Potential's financial ability to support the number of students it has committed to financing is dependent on their eligibility for in-state tuition. *Id.* ¶¶ 7, 9. If the students that True Potential has committed to support lose their eligibility for in-state tuition, True Potential simply would not have the funds to finance the educations they have pledged to pay for starting in 2026. *Id.* ¶¶ 15–17. True Potential would be forced to renegotiate administrative agreements, redouble fundraising efforts, and, in the worst case, inform young students that they will not be able to help them go to college after all. *Id.* 17–19.

Orel Alliance is an Omaha-based nonprofit organization founded in April 2024 to ensure Ukrainian families can obtain the assistance necessary to rebuild and

thrive in Nebraska. Exhibit 2, ¶ 2. One of the primary services Orel offers is education assistance for Ukrainian immigrants. *Id.* ¶¶ 17–19. Orel assists students with identifying schools and programs they can apply to, including connecting them with attorneys and resources for applying for the proper immigration status to apply to those programs. *Id.* ¶ 18. These services also include paying USCIS filing fees for TPS, asylum, and parole for Ukrainian immigrants; as of May 2026, Orel has paid those filing fees for 98 Ukrainian families. *Id.* ¶¶ 12–14. For the 2026-2027 school year, Orel will assist 23 Ukrainian immigrants with applying to the University of Nebraska at Omaha, half of whom have TPS, a pending TPS application, or a pending asylum application. *Id.* ¶ 19. But Orel's ability to refer those students to UNO is dependent on their eligibility for in-state tuition, without which education would be prohibitively expensive. *Id.* Orel Alliance has also provided tuition assistance to Ukrainian students in the past and anticipates doing so in the future if Ukrainian students are eligible for in-state tuition. *Id.* ¶ 20.

Many of the students served by each of the Proposed Intervenors live and work in Nebraska under immigration programs such as DACA and TPS or have pending asylum applications. Exhibit 1, ¶¶ 7–8, 10; Exhibit 2, ¶¶ 10–15. Notably, Nebraska has taken the position in the context of other programs, such as unemployment benefits and the issuance of driver licenses, that persons with DACA or TPS, or who have pending asylum applications, are not lawfully present within the United States. Exhibit 1, ¶ 16; Exhibit 2, ¶ 13; *see E.M. v. Neb. Dep't. of Health & Human Servs.*, 306 Neb. 1 (2020). Proposed Intervenors accordingly fear that a consent judgment

8

that would bar individuals not lawfully present in the United States from eligibility for in-state tuition would directly affect many of the students they serve by rendering them ineligible for in-state tuition rates.

Were that to occur, True Potential and Orel would face significant harm as the costs of supporting the students they serve would skyrocket and imperil the Proposed Intervenors' ability to perform their core missions. *See, e.g.*, Exhibit 1, ¶ 16 ("[I]f students become ineligible for in-state tuition during the summer and fall of 2026, then True Potential will not be able to fulfill its commitments in the spring of 2027, and possibly the fall of 2026, with its current funding and fundraising structure."); Exhibit 2, ¶ 26 ("[W]e would need to retrain our staff on the private educational opportunities that exist in Nebraska or engage in additional fundraising campaigns and solicitations to ensure Ukrainian immigrants can access affordable educational opportunities."). In the case of Orel, if the students it refers to public colleges become ineligible for in-state tuition because of TPS, then Orel will need to cover the $2,350 parole filing fee for these students even though it creates unnecessary, duplicative immigration statuses. *Id*. ¶¶ 14, 24. Simply put, Proposed Intervenors' ability to continue supporting Nebraska resident pursuing higher education, and the tremendous economic and professional opportunities it makes available, hinges on the ability of those students to attend at in-state tuition rates.

## ARGUMENT

Proposed Intervenors have a right to intervene in this litigation pursuant to Federal Rule of Civil Procedure 24(a)(2). The motion should be granted because Proposed Intervenors have Article III standing, their intervention is timely, their

interest in supporting students may be impaired by the outcome of this case, and no existing party will adequately represent that interest. In the alternative, the Court should grant permissive intervention under Rule 24(b)(1)(B).

## I.   Proposed Intervenors Have Article III Standing.

At the outset, Proposed Intervenors have Article III standing to participate in this suit because the outcome of this case directly affects their ability to carry out their organizational missions. Under the familiar three-part test, a party has standing if it (1) is suffering or will suffer an injury-in-fact that is (2) fairly traceable to the challenged conduct and (3) redressable by the Court. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992); *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1077 (8th Cir. 2024). In assessing Proposed Intervenors' standing, the Court "must accept as true all material allegations in the motion to intervene and must construe the motion in favor of the prospective intervenor." *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 973 (8th Cir. 2014).

As discussed *supra* 5–9, the invalidation of the Nebraska statutes at issue would "directly affect[] and interfere[]" with Proposed Intervenors' "core business activities." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) ("*AHM*") (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)); *see* Exhibit 1, ¶¶ 16–20; Exhibit 2, ¶¶ 21–29. *Alliance for Hippocratic Medicine* reaffirmed that a housing services organization had standing to challenge the racially discriminatory practices of a landlord when it "not only was an issue-advocacy organization, but also operated a housing counseling service." *Id.* at 395 (quoting *Havens Realty*, 455 U.S. at 368). That is because the landlord's actions had "perceptibly impaired" the organization's

10

"ability to provide counseling and referral services" and thus "directly affected and interfered" with its "core business activities." *Id.* (quoting *Havens Realty*, 455 U.S. at 379). Because the housing services organization had to "devote significant resources to identify and counteract" the defendant's actions, those actions impaired its ability "to provide counseling and referral services." *Havens Realty*, 455 U.S. at 379.

Similarly, True Potential and Orel Alliance provide direct services to their constituents and community members, and those services would be "perceptibly impaired" if the people they serve were no longer eligible for in-state tuition at Nebraska's institutions of higher education. Given the central role that the challenged statutes play in Proposed Intervenors' ability to perform their missions of facilitating educational opportunities for students, stripping those students of eligibility for that tuition will cause a "concrete and particularized injury in fact" to Proposed Intervenors here. *Iowa v. Wright*, 154 F.4th 918, 939 (8th Cir. 2025) (quoting *AHM*, 602 U.S. at 385 n.2).

## II. Proposed Intervenors Are Entitled to Intervene Of Right.

Proposed Intervenors are entitled to intervene of right under Federal Rule of Civil Procedure 24(a). As the Eighth Circuit has explained, "this rule requires that one seeking intervention file a timely application, and that the applicant then satisfy a tripartite test: 1) the party must have a recognized interest in the subject matter of the litigation; 2) that interest must be one that might be impaired by the disposition of the litigation; and 3) the interest must not be adequately protected by the existing parties." *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 997 (8th Cir. 1993). The rule is "construed liberally, with all doubts resolved in favor of the

11

proposed intervenor." *Nat'l Parks Conservation Ass'n*, 759 F.3d at 975 (quotation marks omitted).

Proposed Intervenors have moved as quickly as possible, less than three weeks after the filing of the complaint and before any progress has been made in this case. They seek to defend their significant interest in the challenged statutes—interests that will almost certainly be impaired in this case if are not permitted to intervene. No one else—certainly not the parties—will defend their interests on their behalf. They should therefore be permitted to intervene to do so themselves.

### A.  Proposed Intervenors' Motion is Timely.

Proposed Intervenors have moved promptly to protect their interests in this litigation and before the completion of briefing on the merits of the parties' joint motion for entry of a consent judgment, Filing Nos. 2, 15. In the Eighth Circuit, courts consider four factors to assess timeliness: "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." *United Food & Commercial Workers Union v. United States Dep't of Agric.*, 36 F.4th 777, 780 (8th Cir. 2022). All four favor intervention here.

### i.  Extent of Litigation Progression

This litigation is still in its infancy. The Eighth Circuit has previously approved as timely a motion to intervene filed four months after the suit was filed because "no substantive activity in the case had occurred between filing of the case and filing of the motion to intervene." *United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th

12

Cir. 1995). That is precisely the case here—the parties have filed no briefs, no hearings have been had, no rulings have been made. This is not the sort of case where a "movant 'monitored' the suit 'for nearly two years and then moved to intervene' only when the parties settled shortly before trial." *See Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995). Nor is it a "ninth-inning-with-two-outs intervention attempt," as the Eighth Circuit observed of a motion to intervene a month after summary judgment in *United Food & Commercial Workers Union.* 36 F.4th at 780. It is still the top of the first inning, and both teams are still moving their players from the bench to the field. Filing Nos. 6–14. The progress of the case weighs in favor of intervention.

### ii.   Prospective Intervenors' Knowledge of Litigation

Proposed Intervenors moved as quickly as possible once they learned of this litigation. Proposed Intervenors could not have learned of this litigation before it was filed on April 21, 2026, and then filed this motion just 16 days later. *Cf. League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011) (holding that four weeks "is a fairly short period of time for a person to obtain counsel, explore his legal options, and file a motion to intervene"). That diligence in no way resembles circumstances in which intervention was denied because "the would-be intervenor was aware of the litigation for a significant period of time before attempting to intervene." *United Food & Commercial Workers Union*, 36 F.4th at 781. The second factor weighs in favor of intervention.

13

### iii. Reason for Any Delay

Proposed Intervenors have not delayed efforts to intervene in this case. As soon as it became clear that no party in this litigation would defend Proposed Intervenors' interests, they promptly sought to intervene. The only time that has passed since was necessary for Proposed Intervenors to secure representation and prepare this motion and memorandum. The third factor weighs in favor of intervention.

### iv. Prejudice to Existing Parties.

Neither the United States nor Nebraska will suffer prejudice if this motion is granted—but Proposed Intervenors will be if it is denied. The question "is whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." *United States v. Union Elec. Co.,* 64 F.3d 1152, 1159 (8th Cir. 1995). As in *Union Electric,* this case has "progressed little between the time it was filed and the time [Proposed Intervenors] moved to intervene." 64 F.3d at 1159. Moreover, with no discovery taken or evidence produced to date, and only a handful of filings, there is no risk that any materials relevant to the litigation have been altered or discarded in the interim. *See United Airlines, Inc., v. McDonald,* 432 U.S. at 393 n.14 (1977) ("There is no reason to believe that in that short period of time United discarded evidence or was otherwise prejudiced.").

Critically, the parties cannot claim any prejudice from the fact that Proposed Intervenors will oppose the entry of their collusive settlement. As the Eighth Circuit has explained, "the mere fact that a proposed intervenor opposes one's position and may be unwilling to settle always exists," but does not demonstrate any cognizable

14

prejudice. *Mille Lacs*, 989 F.2d at 999. A party opposing intervention must demonstrate prejudice from "delay in seeking intervention" rather than from increased difficulty in its "ability to settle." *Id.* After all, Rule 24(a) exists precisely to protect the interests of a proposed intervenor whose interests differ from those of the existing parties to the litigation. *See id.*

Rather than prejudicing the parties, granting intervention here will "serv[e] the interest of the judicial system by resolving all related controversies in a single action." *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1307–08 (8th Cir. 1995). That is particularly true when Proposed Intervenors can join this case at the outset of litigation and provide genuine adversary testing of the parties' legal positions to assist the Court in its review of the proposed consent judgment. *Cf. EEOC v. Prod. Fabricators, Inc.*, 666 F.3d 1170, 1172 (8th Cir. 2012) (reaffirming that when "reviewing a proposed consent decree" the trial court has an independent duty "to review the settlement for fairness, reasonableness, and adequacy" notwithstanding the agreement of the parties) (quotation marks omitted).

## B. Proposed Intervenors Have Substantial Interests At Stake.

Proposed Intervenors have cognizable organizational and financial interests in defending the challenged statutes. *See supra* 5–9, 8–11. An interest is cognizable "where it is 'direct, substantial, and legally protectable.'" *Medical Liability Mut. Ins. Co. v. Alan Curtis LLC,* 485 F.3d 1006, 1008 (8th Cir. 2007). Here, Proposed Intervenors' missions would be substantially frustrated and their coffers drained if the parties' motion were granted. That cost is not "tangential or collateral"—it is at the very heart of this case, "contingent upon the outcome of the litigation." *See Union*

15

*Elec. Co.*, 64 F.3d at 1161–62. All Proposed Intervenors need show is that this case will "impair the[ir] established and substantial commercial, financial, and recreational interests." *Animal Prot. Inst. v. Merriam*, 242 F.R.D. 542 (D. Minn. 2006). With their core of their organizational missions on the line, Proposed Intervenors clear that bar.

Moreover, other federal circuits have explicitly recognized that education and educational opportunities are a significant, legally protectable interest, separate and apart from the financial injury of tripling tuition costs. *See, e.g., Brumfield v. Dodd*, 749 F.3d 339, 343 (5th Cir. 2014) (permitting intervention of right where a proposed consent decree could have eliminated educational opportunities stemming from educational vouchers and scholarships); *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (finding intervening Black and Latino university applicants had a substantial legal interest in the preservation of educational opportunities for Black and Latino students); *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 862 (9th Cir. 2016) (identifying a protectable interest in receiving a free public education). Proposed Intervenors thus have cognizable financial and educational interests at stake.

### C. Proposed Intervenors' interest will be impaired without intervention.

The Proposed Intervenors' interests are certain to be harmed by the consent judgment, if it is entered. The Eighth Circuit asks whether a party seeking intervention has an interest "that might be impaired by the disposition of the litigation"—that is, whether "disposition of the action may as a practical matter

16

impair or impede the applicant's ability to protect [its] interest." *Union Elec. Co.*, 64 F.3d at 1161. Given that the parties here agree on how this case should be decided, it is all but guaranteed that Proposed Intervenors' significant interests will be prejudiced if they are not permitted to intervene.

If the collusive consent judgment is approved, Proposed Intervenors will face budgetary shortfalls—in True Potential's case, of hundreds of thousands of dollars— and the evisceration of the resources they assist individuals in obtaining. Without intervention, Proposed Intervenors cannot participate in the proceedings or appeal any adverse judgment. Proposed Intervenors seek an opportunity to defend the Nebraska statutes at issue and their organizational stake in their continued operation. As discussed above, *supra* 8–11, their ability to keep their word and help the people they were established to assist—and whom they have assisted in the past—-is dependent on the eligibility of those Nebraska residents for in-state tuition. If the parties are successful in securing the invalidation of Nebraska's in-state tuition provisions, Proposed Intervenors will be forced either to cease assisting individuals as part of their core organizational mission, or to expend additional resources trying to come up with stopgap remedies to fill sudden shortfalls. With no other avenue to protect their significant interest, Proposed Intervenors will face significant prejudice if they are not allowed to intervene.

### D. No party will adequately represent Proposed Intervenors' interest.

The Proposed Intervenors' interest is not one that will be adequately protected by existing parties to the litigation. *Medical Liability Mut. Ins. Co.*, 485 F.3d at 1008. A

17

party seeking intervention bears the "minimal" burden of demonstrating representation of their interests by the existing parties "may be inadequate." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972); *see also Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997). Although government parties are typically "presumed to represent the interests of its citizens as parens patriae," no such presumption applies where a proposed intervenor "stands to gain or lose from the litigation in a way different from the public at large." *Chiglo*, 104 F.3d at 187. That is especially true where a "case is disposed of by settlement rather than by litigation," because "what the state perceives as being in its interest may diverge substantially" from that of an intervenor. *Mille Lacs Band*, 989 F.2d at 1001. Proposed Intervenors may thus "rebut the presumption that the government is adequately representing its interests by showing that its interests actually differ from or conflict with the government's interests." *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785–86 (8th Cir. 2003).

Plaintiff United States actively seeks to dismantle the Nebraska law that makes education affordable for the people Proposed Intervenors serve. And the Nebraska Attorney General has abdicated his statutory responsibilities to defend the constitutionality of the challenged state statutes, choosing instead to concede defeat and abandon the law before even being served with the complaint. Indeed, the pace of the litigation implies significant collaboration and coordination between the parties and is in no way adversarial. The joint motion for a consent judgment was, for example, filed contemporaneously with the complaint and before a request for

18

summons was issued or the State of Nebraska even entered an appearance. *See* Filing Nos. 1, 2. The existing parties thus have a unity of interests: they both seek the invalidation of the challenged Nebraska statutes. Proposed Intervenors seek to defend them.

Proposed Intervenors' interest is thus in direct conflict with the existing parties' interests. This collusion bears none of the adversity that is "essential to the integrity of the judicial process." *United States v. Johnson*, 319 U.S. 302, 305 (1943). As such, the Proposed Intervenors can have no confidence that their interests will be adequately represented.

## III. In The Alternative, Proposed Intervenors Should Be Granted Permissive Intervention.

If the Court concludes that the Proposed Intervenors are not entitled to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), it should allow them to permissively intervene under Rule 24(b)(1)(B) because the defense they seek to offer goes to the central legal question in this case. The Court may permit anyone to intervene who has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Here, Proposed Intervenors seek to join the case to offer a defense of the Nebraska statutes at issue and to show why they do not conflict with federal law and thus do not violate the Supremacy Clause. The defense they intend to offer is directly responsive to the claims presented in the Complaint. *See* Filing No. 1.

In deciding whether permissive intervention is appropriate, a "principal consideration" is whether the intervention "will unduly delay or prejudice the

19

adjudication of the original parties' rights." *Chase v. Andeavor Logistics, L.P.*, 165 F.4th 1102, 1124 (8th Cir. 2026); Fed. R. Civ. P. 24(b)(3). As explained, no such delay or prejudice exists here.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors' motion to intervene should be granted.

May 7, 2026

/s/ *Nicholas Grandgenett*
Nicholas K. Grandgenett
   (NE Bar 27323)
Robert E. McEwen
   (NE Bar 24817)
James A. Goddard
   (NE Bar 24150)
947 O. St, Ste, 401
Lincoln, NE 68508
Phone: (402) 438-8853
Fax: (402) 438-0263

ngrandgennett@neappleseed.org
rmcewen@neappleseed.org
jgoddard@neappleseed.org

Respectfully submitted,

/s/   *Orlando Economos*
Orlando Economos*
   (DC Bar 90013791)
Joshua M. Salzman*
   (DC Bar 982239)
Paul R.Q. Wolfson*
   (DC Bar 414759)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 921-4875

oeconomos@democracyforward.org
jsalzman@democracyforward.org
pwolfson@democracyforward.org


*Counsel for Proposed Intervenors*

* Motions to appear pro hac vice
   forthcoming

20

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d), the undersigned, Proposed Interventors' attorney, hereby certifies that Proposed Intervenors' Brief in Support of Motion to Intervene (Filing No. 18) contains 6,257 words (including the caption, headings, footnotes, and quotations) in compliance with said rule. This Brief was prepared using Microsoft® Word (Version 16.107.2). The electronic version of this Brief was generated by converting to PDF from the original word processing file.

/s/ Nicholas K. Grandgenett
Nicholas K. Grandgenett


## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2026, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system which sends notice of electronic filing to all counsel of record.

/s/ Nicholas Grandgenett
Nicholas K. Grandgenett

21