**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
OMAHA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | Case No. 8:26-CV-172 |
| v. | |
| STATE OF NEBRASKA, | **JOINT BRIEF IN OPPOSITION TO INTERVENTION** |
| **Defendant.** | |

Plaintiff United States of America and Defendant State of Nebraska jointly submit this brief in opposition to Putative Intervenors True Potential and Orel Alliance's Motion to Intervene.

## INTRODUCTION

Twenty years ago, the State of Nebraska enacted a law that extended in-state tuition benefits to illegal immigrants. Then-Governor Dave Heineman "vetoed the bill because it violated federal law and was bad policy," but the unicameral Legislature overrode his veto. Kris Kobach, *The Senate Immigration Bill Rewards Lawbreaking: Why the DREAM Act Is a Nightmare*, The Heritage Foundation (Aug. 14, 2006).[1]

Fast forward to the present. Shortly after taking office in 2025, President Trump issued two executive orders that made clear the United States would no longer tolerate such violations. He ordered federal departments and agencies to "ensure … that no taxpayer-funded benefits go to unqualified aliens" and to "take appropriate

---

[1] Available at https://perma.cc/UY4E-BUZL.

1

action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." Filing No. 1, Compl. ¶¶ 10–11 (first quoting Executive Order 14218, then quoting Executive Order 14287). Accordingly, the United States sued Nebraska and alleged violations of the Supremacy Clause. *See id.* at ¶¶ 56–80. To bring Nebraska into alignment with federal law, Nebraska agreed with the United States's position, and both parties asked the Court to "enter a permanent injunction" preventing the Nebraska laws from being enforced to "extend eligibility for in-state tuition benefits to aliens who are not lawfully present in the United States." Filing No. 2, Joint Motion for Entry of Consent Judgment, at ¶ 9.

True Potential and Orel Alliance ("Putative Intervenors")—"two organizations that fund and assist immigrants pursuing higher education in Nebraska"—now want "to intervene … to defend the validity of the challenged Nebraska statutes." Filing No. 18, Proposed Intervenors' Motion to Intervene, at 1. Yet Putative Intervenors do not have standing to intervene here. The Consent Judgment will not injure them in any cognizable way. Not only that, but the factors for intervention weigh against them.

This Court should deny their motion to intervene.

2

## ARGUMENT

### I.    Putative Intervenor True Potential is Not The Real Party in Interest and Has No Capacity to Sue

This Court should deny True Potential's motion to intervene because True Potential is not the real party in interest. "An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "The real party in interest is a party who, under governing substantive law, possesses the rights to be enforced." *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 786 (8th Cir. 2010) (Smith, J., concurring and dissenting in part) (citing *Iowa Public Serv. Co. v. Medicine Bow Coal Co.,* 556 F.2d 400, 404 (8th Cir. 1977)).

True Potential does not have substantive rights to defend because it is not a juridical person under Nebraska law. True Potential describes itself as "operat[ing] as a subprogram within Matters on Tomorrow, a Nebraska-based nonprofit." Filing No. 21, Index in Support of Motion, Ex. 1, Decl. of Ross Pesek at ¶ 2. It is registered with the Nebraska Secretary of State as a *trade name*, with contact information for Matters on Tomorrow.[2] *See generally* Neb. Rev. Stat. § 87-210. Under Nebraska law, a trade name can register as a corporation, Neb. Stat. Rev. § 87-210(1)(a), and a corporation can "sue and be sued, complain, and defend in its corporate name," Neb. Rev. Stat. § 21-1928 (emphasis added). But Nebraska law does not give a *noncorporate* trade name such rights. And True Potential never filed as its own corporation. True Potential therefore has no rights to defend that warrant intervention. *Cf. Am.'s Wholesale Lender v. Pagano*, 866 A.2d 698, 700 (Conn. App.

---

[2] *See* https://perma.cc/3QXE-B7MW.

2005) ("Because the trade name of a legal entity does not have a separate legal existence, a plaintiff bringing an action solely in a trade name cannot confer jurisdiction on the court.").

For the same reason, True Potential lacks capacity to sue. Capacity is determined "by the law under which [a corporate entity] was organized." Fed. R. Civ. P. 17(b)(2). As reviewed, Nebraska law empowers the parent nonprofit corporation, not its trade names, to sue and be sued. *Cf. Steel v. Hahn Prop. Mgmt. Corp.*, 19 F.3d 22, at *1 (7th Cir. 1994) (Table Decision) ("[Y]ou can't sue a trade name."); *see also*, *e.g.*, *Schiavone v. Fortune*, 477 U.S. 21, 23, 28 (1986) (rejecting argument that lawsuit against a "trademark" that was an "internal division of … a New York corporation" should be construed as a suit against the corporation itself and affirming dismissal of complaint).

Because True Potential is not the real party in interest and lacks the "[c]apacity to sue or be sued [as] determined" by "the law under which it was organized," this Court should deny its motion to intervene.

## II.     Neither Putative Intervenor Has Standing

Putative Intervenors "must establish Article III standing." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009). "To demonstrate standing, [intervenors] must clearly allege facts showing an injury in fact, which is an injury to a legally protected interest that is concrete, particularized, and either actual or imminent." *Id.* at 833–34 (internal quotation marks and citation omitted). Because Putative Intervenors "challenge[] the government's [allegedly] unlawful

4

regulation … of *someone else*"—namely, the State of Nebraska—they have a "substantially more difficult" task. *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (internal quotation marks and citation omitted). Both True Potential and Orel Alliance fall far short.

Start with True Potential. It alleges that the Consent Judgment would result in insufficient "funds to pay the full tuition of the 27 students attending public community and state colleges in Nebraska during the 2026–2027 school year." Filing No. 21, Ex. 1 at ¶ 16. For at least two reasons, that does not establish a cognizable injury.

*First*, it's too speculative. True Potential never avers that a single student purported to receive one of the 27 scholarships is unlawfully present in the United States and therefore at risk of needing more money under the Consent Judgment. That makes True Potential's claim that it will be unable to fully fund all 27 pledged scholarships pure speculation. *See* Filing No. 32, Proposed Intervenors' Br. at 7 ("*If* the students that True Potential has committed to support lose their eligibility for in-state tuition, True Potential simply would not have the funds to finance the education they pledged to pay for starting in 2026.") (emphasis added).

True Potential tries to say that it will "need to renegotiate its administrative agreements and increase fundraising efforts," and *that* will cause it to "renege on its commitment to the 27 students." Filing No. 21, Ex. 1 at ¶ 18–19. But that puts the Consent Judgment too "far removed from [the] distant (even if predicable) ripple effects" that represent True Potential's ostensible injury. *Alliance for Hippocratic*

5

*Med.*, 602 U.S. at 383. The Consent Judgment is not the direct cause of these attenuated consequences (if they even come to pass), so True Potential cannot claim them as injuries that confer standing.

Not only that, but it's a patent attempt to "manufacture … standing" where none exists. *Id.* at 394. An "organization … cannot spend its way into standing simply by expending money to gather information and advocate." *Id.* Otherwise, "all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.* at 395. If True Potential decides it needs to engage in more fundraising in the wake of a Consent Judgment it dislikes, that does not mean True Potential can claim additional fundraising as a litigable injury.

*Second*, True Potential has not identified any legal obligations that the Consent Judgment would affect. Not only did True Potential fail to demonstrate a single scholarship that the Consent Judgment would jeopardize, but it also failed to show that it even has a legal obligation to provide those scholarships in the first place. At most, True Potential says it will have to "renege" on its promise. But an allegation that an organization will have to "break its promise … is not the kind of concrete and particularized invasion of a legally protected interest necessary to demonstrate an injury in fact." *Haaland v. Brackeen*, 599 U.S. 255, 295 (2023) (internal quotation marks and citation omitted).

Orel Alliance fares no better. It posits that it will "need to spend more money covering the filing fees for Ukrainian immigrants to apply for parole." Filing No. 21,

6

Ex. 2, Decl. of Amanda Hall at ¶ 24. Yet again, Orel Alliance does not identify a single Ukrainian immigrant that would be affected by the Consent Judgment. So its fears about increased costs are simply too speculative to count as a cognizable injury.

Similarly, Orel Alliance frets that "*if* these students become ineligible for in-state tuition … these same Ukrainian immigrants will turn to Orel Alliance for referrals to charitable financial services instead of education services," which will "undermine[] Orel Alliance's goal of supporting an independent and self-reliant Ukrainian immigration population in Nebraska." Filing No. 21, Ex. 2 at ¶ 25 (emphasis added). It further postulates that *if* these things come to pass, Orel Alliance will have to "hire a new full-time employee" "to develop new organizational resources." Filing No. 21, Ex. 2 at ¶ 26. Again, this is another blatant attempt to bootstrap standing where none exists. "Undermining" a nongovernmental organization's goals is too ephemeral to serve as a concrete injury, lest every organization obtain "standing to challenge almost every federal policy that they dislike." *Alliance for Hippocratic Med.*, 602 U.S. at 395.

In short, neither True Potential nor Orel Alliance met their burden to show that they have a cognizable injury that warrants intervention.

### III.    Putative Intervenors Cannot Show That Their Interest Is Unrepresented or That They Should Permissively Intervene.

Putative Intervenors have no unrepresented interest that warrants intervention. A would-be intervenor is "entitled to intervention" if, on timely motion, he shows both an "interest in the subject matter of the litigation" that may be impaired and that "existing parties do not adequately protect that interest." *Entergy*

*Ark., LLC v. Thomas*, 76 F.4th 1069, 1071 (8th Cir. 2023) (quoting Fed. R. Civ. P. 24). When "a proposed intervenor's asserted interest is one that a governmental entity who is a party to the case is charged with protecting," courts "presume that the government's representation is adequate." *Id.*

Putative Intervenors have not made the "strong showing" that the State is inadequately representing their interests here. To determine adequacy, courts "focus on what the case is about." *Id.* at 1072 (quotation marks omitted). And this case is binary: Do the Nebraska laws violate federal law (and thus the Supremacy Clause)?

Nebraska law entrusts the Nebraska Attorney General with the duty to "defend actions and claims against the state." Neb. Rev. Stat. § 84-205(1). The Attorney General routinely defends the constitutionality of Nebraska statutes, and Nebraska's courts explicitly acknowledge that role. *See, e.g.*, Neb. Sup. Ct. R. § 2-109(E) (providing that appellate briefs asserting unconstitutionality of a Nebraska statute must be served on the Attorney General "and the Attorney General shall be entitled to file a response and may be heard at oral argument"); *State v. Catlin*, 953 N.W.2d 563, 566 (Neb. 2021) (recognizing that Rule 2-109 "ensures that the Attorney General has been notified of the challenge to the constitutionality of a statute, so that the Attorney General may carry out the common-law duty to defend all duly adopted statutory enactments that are not unconstitutional").

That duty, however, has discretionary components. For the Attorney General's duty to defend state laws extends only to those "duly adopted" and "not unconstitutional." *State v. Denton*, 949 N.W.2d 344, 347 (Neb. 2020) (acknowledging

8

"the Attorney General has some duties which are not purely statutory and are sometimes referred to as the 'common-law duties of the office'" including that "he or she must defend duly adopted statutory enactments that are not unconstitutional"). Although done sparingly, the Attorney General has conceded unconstitutionality in response to challenges before. *See, e.g., Planned Parenthood of the Heartland v. Heineman*, 724 F. Supp. 2d 1025, 1042 (D. Neb. 2010) ("This Court appreciates the Defendants' integrity and candor in acknowledging that LB 594 violates the Commerce Clause of the United States Constitution.").

Here, the Attorney General has exercised his discretion and concluded that the challenged Nebraska laws cannot be legally defended and has agreed to the proposed Consent Judgment. This is consistent with his duty.

That the Attorney General has exercised his discretion in a way that Putative Intervenors disagree with does not mean he inadequately represents their interest. "It is not sufficient that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests." *Little Rock Sch. Dist. v. N. Little Rock Sch Dist.*, 378 F.3d 774, 780 (8th Cir. 2004). To overcome the strong presumption that the State (through the Attorney General) adequately represents Putative Intervenors' interest, Putative Intervenors needed to show "that the *parens patriae* has committed misfeasance or nonfeasance in protecting the public." *North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 922 (8th Cir. 2015) (quoting *Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997)).

9

Putative Intervenors failed to meet this high bar. The Attorney General carefully considered the legal arguments and concluded that the United States's legal position was correct and, as a matter of legal strategy, it would be best to save the taxpayers money and agree to a Consent Judgment on a clear legal question. He— the constitutional officer charged with making such decisions—considered and rejected the very arguments that Putative Intervenors want to make. *E.g.*, Filing No. 20, Putative Intervenors' Proposed Answer at 8 (asserting the Tenth Amendment as an affirmative defense). That's not a "clear dereliction of duty," *Stenehjem*, 787 F.3d at 922—it's the exact opposite.

Putative Intervenors try to introduce space between their interests and the State's interest by pointing to potential harms that Putative Intervenors could face if the Court enters the Consent Judgment. Whatever downstream effects Putative Intervenors might face is not "what the case is about." *Entergy Ark.*, 76 F.4th at 1072. Again, the legal question here is binary: Do the challenged Nebraska laws violate federal law? And the State has the same interest in answering that question as Putative Intervenors do. That the State answers it *differently* does not mean that the State has not adequately represented the interest. *Little Rock Sch. Dist.*, 378 F.3d at 780; *see Stenehjem*, 787 F.3d at 922 ("That the United States settled a lawsuit related *to use* of the Grasslands in a way that displeases the [the entity seeking intervention] does not suggest that the government will fail to defend its *ownership interest* in the land in the future.").

10

Putative Intervenors next try to avoid this conclusion by alleging that the "Attorney General has abdicated his statutory responsibilities to defend the constitutionality of the challenged state statutes," pointing to the "pace of litigation" as their only evidence. Filing No. 32 at 18. But that's just another way of disagreeing with the Attorney General's litigation strategy, not a way to show malfeasance. And as this Court has already pointed out, the Nebraska laws are "in clear violation of federal laws." Filing No. 15, Order at 2. "[G]iven such clear federal authority," the Attorney General did not need copious time to make the right decision about what was in Nebraska's best interest. *Id*.

Finally, this Court should also deny Putative Intervenors' request for permissive intervention. *See* Fed. R. Civ. P. 24(b). Even if a party does not have a right to intervene, they can request to intervene if, among other things, their intervention would not cause undue "delay or prejudice the adjudication of the parties' rights." *Stenehjem*, 787 F.3d at 923 (internal quotation marks omitted). Courts have denied permissive intervention, "citing the … lack of Article III standing, the[] lack of a legally-protected interest in the litigation, and the potential for delay caused by the introduction of ancillary issues." *Stenehjem*, 787 F.3d at 922–23. For the reasons reviewed, the same is true here. Putative Intervenors lack standing, have no legally cognizable interest in this litigation, and would only bog down the litigation with ancillary issues. This Court should deny their motion.

## **CONCLUSION**

This Court should deny Putative Intervenors' motion to intervene.

Dated: May 19, 2026                    Respectfully submitted,

MICHAEL T. HILGERS (#24483)            /s/ CODY S. BARNETT (#28391)
Attorney General of Nebraska           Solicitor General

Nebraska Department of Justice         Counsel for State of Nebraska
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov

12

DATED: May 19, 2026                    Respectfully submitted,

STANLEY E. WOODWARD, JR.               /s/ SEAN
Associate Attorney General             SKEDZIELEWSKI (NY#6112429)
                                       Counsel to the Assistant Attorney
BRETT A. SHUMATE                       General
Assistant Attorney General             Civil Division
Civil Division

YAAKOV M. ROTH                         Counsel for United States of
Principal Deputy Assistant Attorney    America
General
Civil Division

BENJAMIN MEHR
Senior Counsel to the
Associate Attorney General

ANNA EDWARDS
Counsel to the
Associate Attorney General
Civil Division
United States Department of Justice
950 Pennsylvania Ave NW
Washington, D.C. 20530
Tel: 202-307-1697
Fax: (402) 471-3297
Sean.Skedzielewski@usdoj.gov

13

DATED: May 19, 2026                Respectfully submitted,

                                   /s/ LESLEY A. WOODS
                                   United States Attorney
                                   District of Nebraska

                                   1620 Dodge St., Suite 1400
                                   Omaha, Nebraska 68102
                                   Tel.: 402-661-3700

                                   Counsel for United States of
                                   America

14

## CERTIFICATE OF COMPLIANCE

Pursuant to NE. Civ. R. 7.1(d), the undersigned hereby certifies that the foregoing principal brief contains 2,776 words (including the caption, headings, footnotes, and quotations) in compliance with said rule. The undersigned utilized the word count function of Microsoft Word for Microsoft Office 365. The undersigned also certifies that no generative artificial intelligence program was used in drafting this document.


/s/ CODY S. BARNETT
Cody S. Barnett